IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01958-KLM

ELIZABETH A. BUTTS,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court[1] on the **Social Security Administrative Record** [#15],[2] filed October 2, 2014, in support of Plaintiff's Complaint [#1] seeking review of the decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for disability insurance benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq., and for supplemental security income benefits pursuant to Title XVI of the Act, 42 U.S.C. § 1381 et seq. On January 5, 2015, Plaintiff filed an Opening Brief [#18] (the "Brief"). Defendant filed a Response [#21] (the "Response") in opposition, and Plaintiff filed a Reply [#22]. The Court has jurisdiction to review the Commissioner's final decision

---

    [1] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Order of Reference* [#27].

    [2] "[#15]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

under 42 U.S.C. §§ 405(g) and 1383(c).  The Court has reviewed the entire case file and the applicable law and is sufficiently advised in the premises.  For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

## I. Factual and Procedural Background

Plaintiff alleges that she became disabled at the age of thirty-nine on March 1, 2007, due to migraines and post-traumatic stress disorder ("PTSD").  Tr. 135, 140.[3]  On February 7, 2008, Plaintiff protectively filed applications for disability insurance benefits under Title II and for supplemental security income under Title XVI.  Tr. 18.  On November 17, 2009, a hearing was held before an Administrative Law Judge (the "ALJ").  Tr. 18.  On January 29, 2010, the ALJ entered his Decision, finding that Plaintiff was "not disabled under section 1614(a)(3)(A) of the Social Security Act."  Tr. 27.  The case was appealed to the United States District Court for the District of Colorado and remanded for further proceedings.  Tr. 329.  "Pursuant to the District Court remand order, the Appeals Council . . . directed the [ALJ] . . . to articulate an assessment of all of the factors found in 20 CFR 404.1527, including an explanation as to why Dr. McInroy's assessment was rejected."  Tr. 329.  On remand, the ALJ held three additional hearings.  Tr. 329.  On August 9, 2013, Dr. McInroy testified on behalf of Plaintiff.  Tr. 329.  Plaintiff testified on August 12, 2013, and on January 23, 2014.  Tr. 329.  Jack LeBeau ("LeBeau"), an impartial medical expert, and Bonnie Martindale, an impartial vocational expert ("VE"), also testified on January 23, 2014. Tr. 329.

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 15, 15-1, 15-2, 15-3, 15-4, 15-5, 15-6, 15-7, 15-8, 15-9, 15-10, 15-11, 15-12, 15-13, 15-14, 15-15, 15-16, 15-17, and 15-18 by the sequential transcript numbers instead of the separate docket numbers.

On February 4, 2014, the ALJ entered his second Decision, again finding that Plaintiff was "not disabled under section 1614(a)(3)(A) of the Social Security Act." Tr. 347-48. The ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2015, and that Plaintiff had not engaged in substantial gainful activity ("SGA") since March 1, 2007 (the alleged onset date of her disability), except for July 2010 through February 2013. Tr. 331-32. The ALJ found that Plaintiff suffers from two severe impairments: (1) migraine headaches, and (2) PTSD. Tr. 332. However, the ALJ also found that these impairments, individually or in combination, do not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." Tr. 333. The ALJ next concluded that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work activities with the following limitations:

> The claimant should not be required to lift and carry more than 20 pounds occasionally and 10 pounds frequently. The claimant should not be required to work at unguarded heights or near unguarded hazardous mechanical equipment. The clamant should not be required to do more than simple, unskilled work activities. The claimant should not be required to have more than superficial interaction with co-workers and should not be required to interact with the public. The claimant should not be required to adapt to more than simple changes in a routine work setting more often than on a weekly basis.

Tr. 334. Based on the RFC and the testimony of the VE, the ALJ found that Plaintiff was unable to perform any past relevant work but that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform . . . ." Tr. 345-46. Specifically, based on the testimony of the VE, the ALJ concluded that Plaintiff could perform the representative occupations of a router and a marker. Tr. 346. He therefore found Plaintiff not disabled at step five of the sequential evaluation. Tr. 347. The ALJ's decision has

become the final decision of the Commissioner for purposes of judicial review. 20 C.F.R. §§ 404.981, 416.1481.

## II. Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act. To be disabling, the claimant's condition must be so functionally

limiting as to preclude any substantial gainful activity for at least twelve consecutive months. See *Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo.*" *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

**A.    Legal Standard**

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. See 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity." *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). If not, the ALJ considers at step two whether a claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142). "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work." *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142). "Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

**B.     Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1140 (internal quotation marks omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ." *Grogan v. Barnhart*, 399 F.3d

1257, 1261-62 (10th Cir. 2005). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Further, evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. Analysis

Plaintiff requests judicial review of the ALJ's decision denying her disability insurance benefits and supplemental security income. *Brief* [#18] at 4-5. Specifically, Plaintiff argues that the ALJ erred in his analysis of the treating psychologist's opinion and in making certain findings which Plaintiff asserts violate agency policy. *See id.* at 2.

**A.    The Medical Opinion of Treating Psychologist Dr. McInroy**

In accordance with an instruction given by the District Court, the ALJ conducted a significant and in-depth analysis of Dr. McInroy's opinions. *See* Tr. 337-45. Plaintiff argues that the ALJ failed to articulate good reasons for affording his various opinions "very little weight" or "no weight" at all. *Id.* at 14-18; Tr. 342, 344.

An ALJ must give the opinion of a treating physician controlling weight only when it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "consistent with other substantial evidence in the record." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.* Even if a treating physician's medical opinion is not entitled to controlling weight, however, "[t]reating source

medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989). Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001); 20 C.F.R. § 404.1527(c). Although the six factors listed above are to be considered in weighing medical opinions, the Court does not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Oldham*, 509 F.3d at 1258 (quoting *Watkins*, 350 F.3d at 1300).

Plaintiff primarily discusses the opinions of Dr. McInroy, Plaintiff's treating psychologist, as they relate to the opinions of Dr. LeBeau, the impartial medical expert who testified before the ALJ. The ALJ afforded "great weight" to the opinion of Dr. LeBeau concerning claimant's migraine headaches and physical impairments, but not to his opinion regarding her psychological impairments. Tr. 344. Plaintiff's primary argument seems to be that Dr. LeBeau assumed a state of the record that was not correct, while Dr. McInroy took into account the totality of Plaintiff's impairments. *Brief* [#18] at 17-18. Plaintiff argues that Dr. LeBeau "premised his testimony on the absence of a finding of intractable headaches." *Id.* at 17 (citing Tr. 391). Plaintiff argues that the record belies this basis for

his opinion.  *Brief* [#18] at 17 (citing Tr. 209 (January 2007 statement by Deborah G. Fisher, M.D. ("Dr. Fisher"), stating that Plaintiff was not responding to one medication and therefore a different medication would be tried); 806 (March 2012 statement by Cori Millen, D.O., cryptically stating "chronic migraine without aura with intractable migraine so stated without mention of status migrainosus" [sic]), 986 (same), 989 (same), 992 (same)). However, the Court notes that Plaintiff told Dr. Fisher that "[i]f she treats her headache early in the course of its onset, medications can stop the migraine or decrease its intensity, but this is not consistent." Tr. 210.  Plaintiff also testified before the ALJ that medication can decrease the frequency and intensity of her migraine episodes, although not totally eliminate them. Tr. 421.  In November 2011, Plaintiff told another medical provider that the migraine symptoms were "moderate" in severity and were "improving," and were relieved by various medications.  Tr. 1010.

In short, given the state of the evidence, the Court cannot find that Dr. LeBeau erred in his assessment of the medical record.  *See Brief* [#18] at 17.  However, even were the Court to second-guess this medical opinion and find that the ALJ should have given less weight to Dr. LeBeau's opinion, Plaintiff's argument that Dr. McInroy's opinion should then be given greater weight is still without merit.  As the ALJ noted, "Dr. McInroy's qualifications per his own testimony are in the field of psychology and therapy.  Therefore he is not qualified to give opinions on the claimant's physical [RFC].  In addition, Dr. McInroy has not treated the claimant for migraines and has performed no physical assessments or examination of the claimant." Tr. 344-45.  A similar issue arose in *Miller v. Astrue*, 496 F. App'x 853, 859 (10th Cir. 2012).  In that case, the Tenth Circuit Court of Appeals stated:

> We also reject Ms. Miller's argument that the ALJ erred in not including

> limitations in her RFC due to hand pain and limited dexterity because a *psychological* consultative examiner, John Hickman, Ph.D., noted that she reported pain in her hands while using a dynamometer and that her "fine motor dexterity was markedly slow with her right hand." Further, Ms. Miller's assertion—without citation to any authority—that a psychologist is qualified to render an opinion regarding a claimant's physical impairment, is without merit.

*Miller*, 496 F. App'x at 659 (internal citations omitted) (citing *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (observing that a psychologist "was not qualified to diagnose" "underlying physical conditions"); 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"), *id.* § 416.927(d)(5) (same)). Thus, the Court finds that the ALJ did not err in his assessment of Dr. McInroy's opinion in comparison to Dr. LeBeau's opinion.

Plaintiff also argues that the ALJ erred by discussing the onset of a panic attack when Plaintiff allegedly incurred while attending a basketball game. *Brief* [#18] at 16. Plaintiff argues that this episode merely demonstrates that Plaintiff tried and failed to socialize and that Plaintiff should not be penalized for her attempt. *Brief* [#18] at 16. However, the Court first notes that it was not Plaintiff (as stated in the Brief), but rather Plaintiff's *daughter* who had a panic attack which resulted in the family having to leave the basketball game. Tr. 320. The ALJ correctly made this distinction. Tr. 337. Plaintiff has failed to direct the Court's attention to any evidence that she also had a panic attack at the game. As the ALJ noted, Plaintiff's attendance at this game "is inconsistent with the claimant's allegations of a complete lack of 'social life' and her other reports to Dr. McInroy of isolating and being unable to leave home." Tr. 337. In other words, Plaintiff's attendance at the basketball game with no discernible problems does not support her

assertion of total isolation and inability to socialize. The Court finds no error in the ALJ's citation to this evidence in support of his Decision.

To the extent Plaintiff argues that the ALJ's choice to disregard Dr. McInroy's opinion is not supported by substantial evidence, the Court disagrees. *See Brief* [#18] at 14-16. Plaintiff directs the Court's attention to no legal authority in support of her argument except the broad proposition that the record must be reviewed as a whole. *See id.* at 15 (citing *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014)). The ALJ must consider medical opinions in the context of the record as a whole to evaluate their consistency and may reasonably discount opinions that are inconsistent with other medical evidence. 20 C.F.R. § 404.1527(c)(4); *Raymond v. Astrue*, 621 F.3d 1269, 1272, (10th Cir. 2009). When considering the ALJ's evaluation of a physician's opinion, the Court looks to whether the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Oldham*, 509 F.3d at 1258 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). The Court has thoroughly examined the ALJ's opinion in this regard and finds that the ALJ has clearly met this standard. *See, e.g.*, *Hendron*, 767 F.3d at 954 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).") (quoting Social Security Ruling (SSR) 96–8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)).

Accordingly, the Court finds that the ALJ has not committed reversible error with respect to his treatment of Dr. McInroy's opinions. *Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994) (explaining that the Court must affirm if, considering the evidence as a

whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).

**B.     Agency Policy**

When eliciting her opinion, the ALJ told the VE: "By superficial interaction what I mean is it . . . doesn't involve complexity or discussion or solving problems or getting into any kind of controversy that would lead to that just superficial [sic]. In other words, she could be in verbal discussions with co-workers but it would be on such simple things as a co-worker bringing a box of product over here with the instructions from the boss that he wants you to do this next kind of thing." Tr. 410. Plaintiff argues that "[o]nce the ALJ found that [Plaintiff] could not tolerate more than superficial interaction with coworkers and included supervisors and their instructions in that limitation, agency policy demands the finding of an inability to engage in [SGA] despite an otherwise positive vocational profile of youth, education, and skilled past relevant work." *Brief* [#18] at 14.

Plaintiff relies on the Social Security Administration's Program Operations Manual System ("POMS"), which provides guidance to the Commissioner and, as is relevant here, includes a description of policy concerning mental limitations.[4]  *See* POMS DI 25020.010, 2001 WL 1933437. Regarding mental abilities critical for performing unskilled work, POMS

---

[4] The POMS is "a set of policies issued by the Administration to be used in processing claims." *Carver v. Colvin*, 600 F. App'x 616, 618 n.1 (10th Cir. 2015) (quoting *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). The Court "defer[s] to the POMS provisions unless [the Court] determine[s] they are 'arbitrary, capricious, or contrary to law.'" *Id.* POMS "are not products of formal rulemaking" entitled to *Chevron* deference, but "they nevertheless warrant respect" under the broader *Skidmore* framework. *Gragert v. Lake*, 541 F. App'x 853, 856 n.1 (10th Cir. 2013) (citing *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385-86 (2003) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944))). As interpretations of the SSA's own regulations, POMS are "controlling unless plainly erroneous or inconsistent with the regulation." *Gragert*, 541 F. App'x at 856 n.1 (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotation marks omitted)).

states that a person must have the ability to "accept instructions and respond appropriately to criticism from supervisors," "get along with coworkers or peers without (unduly) distracting them or exhibiting behavioral extremes," and "respond appropriately to changes in a (routine) work setting." *Id.* ¶¶ B.3.k.-m.

Defendant argues that Plaintiff misstates the ALJ's RFC finding and the agency's policy as found in the POMS. *Response* [#21] at 23. First, Defendant notes that the POMS is persuasive but lacks the force of law. *Id.* at 23 n.7 (citing *Neikirk v. Massanari*, 13 F. App'x 847, 849 (10th Cir. 2001)). Next, Defendant notes that "the POMS expressly provides that it is the ALJ's duty to determine—based on 'professional judgment, on the basis of the evidence on file in each case'— whether or not a claimant has a substantial loss of ability to meet the basic mental demands of unskilled work." *Response* [#21] at 23 (citing POMS DI 25020.010(3), 2001 WL 1933437). Defendant argues that "the ALJ followed agency policy by consulting a vocational expert when the impact of Plaintiff's limitations was not immediately clear." *Response* [#21] at 24 (citing 20 C.F.R. § 404.1566 (e) (providing that the agency may rely on the testimony of a vocational expert when there is a "complex issue"); SSR 96-9p, 1996 WL 374185, at *9 ("When an individual has been found to have a limited ability in one or more of these basic work activities, it may be useful to consult a vocational resource."); POMS DI 25020.010(A)(3), 2001 WL 1933437).

Plaintiff cites to SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000), for the proposition that the ALJ may never rely on vocational expert testimony that deviates from agency policy. *Reply* [#22] at 3. However, Plaintiff misreads this SSR, which states that "SSA adjudicators may not rely on evidence provided by a VE . . . if that evidence is based on underlying assumptions or definitions that are inconsistent with our regulatory policies

-13-

or definitions." However, the POMS is not a set of regulations; rather, it merely interprets agency regulations. *See Gragert*, 541 F. App'x at 856 n.1. SSR 00-4p merely requires the ALJ to resolve any conflict between the Dictionary of Occupational Titles ("DOT") and the VE by "determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information." The explanation provided by the VE must not conflict with agency *regulations*. SSR 00-4p, 2000 WL 1898704, at *2.

Plaintiff overstates the statements made by the ALJ and the VE in order to create a mountain out of a molehill regarding whether Plaintiff could accept criticism of her work from a supervisor. First, the Court cannot agree that the ALJ included "supervisors and their instructions" in his comment. *Brief* [#18] at 14. If anything, he appears to have specifically differentiated supervisors from co-workers when discussing how a "co-worker" bringing instruction from the "the boss" constitutes an example of superficial interaction. Tr. 410. Nowhere does the Court find evidence in the ALJ's hypothetical that Plaintiff is unable to interact appropriately with a supervisor, have basic interaction with co-workers, or respond to occasional changes in a routine work setting. Tr. 410.

Further, even if supervisors were included in the ALJ's "superficial interaction" statement regarding co-workers, Plaintiff's argument nevertheless fails. The Tenth Circuit Court of Appeals recently addressed a similar issue in *Carver v. Colvin*, 600 F. App'x 616, 618-20 (10th Cir. 2015). There, the Tenth Circuit held that "[i]nteracting with supervisors in the course of routine supervision over simple work is tantamount to the 'superficial' interaction typically encountered in jobs involving such work. To conclude otherwise would parse the ALJ's language too finely." *Carver*, 600 F. App'x at 620. The reasoning applies

equally to the present case, where the ALJ found that Plaintiff "should be limited to work requiring . . . no more than superficial interaction with co-workers" and "should not be required to adapt to more than simple changes in a routine work setting" while doing no "more than simple unskilled work activities." Tr. 342.

Accordingly, the ALJ has not committed reversible error with respect to this issue. *See Glenn*, 21 F.3d at 988.

## IV.  Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

Dated:  September 15, 2015

BY THE COURT:

*[signature]*

Kristen L.  Mix
United States Magistrate Judge